**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CHARLES PONA** | : | |
| | : | |
| **v.** | : | **C.A. No. 08-270S** |
| | : | |
| **A.T. WALL** | : | |

**MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

For the reasons identified in its accompanying memorandum of law, designated party/respondent State of Rhode Island moves to dismiss Petitioner Charles Pona's Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

**/s/ Aaron L. Weisman**

**AARON L. WEISMAN, # 4438**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

Date: September 15, 2008

PDF created with pdfFactory trial version www.pdffactory.com

**CERTIFICATION**

I hereby certify that on September 15, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. I also certify that I caused a copy of the within document to be sent to the following by first-class mail, on the same date:

Charles Pona
Torrance County Detention Facility
Estancia, NM 87016

/s/ Aaron L. Weisman



PDF created with pdfFactory trial version www.pdffactory.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CHARLES PONA** | : | |
| | : | |
| **v.** | : | **C.A. No. 08-270S** |
| | : | |
| **A.T. WALL** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

Background

On July 20, 2000, Petitioner Charles Pona was convicted by a Providence County (Rhode Island) Superior Court Jury (Krause, J., presiding) of having, on August 28, 1999, 1) murdered seventeen year-old Hector Feliciano, 2) carried a pistol without a license,[1] and 3) attempted the arson of a motor vehicle. His new-trial motion was denied by Justice Krause eight-days later, on July 28, 2000; and, on September 14, 2000, Justice Krause – after noting the Defendant's not insignificant criminal history, "his mendacious trial testimony", and his having "lied to the probation officer who prepared the pre-sentence report" (Sentencing Transcript at p. 18) – imposed upon the Defendant a cumulative sentence of life-imprisonment plus eight years (***id.*** at 19-20.)

---

[1] During the pre-trial proceedings in this case, the Defendant "stipulate[d] to" the fact that, on the day of the murder, he "did not have a duly issued license or permit to carry a handgun." (Pre-trial Transcript II, 92.)

In accordance with Rule 5(c) of the Rules Governing Section 2254 Cases In The United States District Courts, the Department of Attorney General states that it does not currently possess official transcripts relating to Petitioner's 2000 trial. The official transcripts are believed to be on file in state court and may be available upon request; the amount of time it would take to furnish the transcripts would depend on whether the file is located at the state court clerk's office or whether the clerk previously transferred the file to an off-site records center for long-term storage.

PDF created with pdfFactory trial version www.pdffactory.com

On appeal of these judgments of conviction and sentence to the Supreme Court of Rhode Island, Petitioner raised four claims of trial-error, a claim under Batson v. Kentucky, 476 U.S. 79 (1986), a claim that the statement he had given Providence Police had been taken in violation of Miranda v. Arizona, 384 U.S. 436 (1966), a claim challenging the validity of the search warrant issued in connection with the murder investigation, and a claim that the trial justice should not have denied his new-trial motion. (*See generally Brief in Chief of Defendant/Appellant Charles Pona* in Rhode Island Supreme Court Case Number 2005-095-C.A.) Following the submission of briefing and oral argument relative to these raised issues, the Rhode Island Supreme Court, on June 15, 2007, denied and dismissed Petitioner's appeal, and affirmed his judgments of conviction. State v. Pona, 926 A.2d 592 (R.I. 2007).

In the instant 28 U.S.C. § 2254 action, Petitioner takes issue with the Rhode Island Supreme Court's rejection of the first two issues raised on direct appeal, the, respectively, Batson and Miranda claims. Because, however, the Rhode Island Supreme Court's rejection of these claims was neither contrary to, nor involved an unreasonable application of, clearly established federal law, the State has moved to dismiss Petitioner's 28 U.S.C. § 2254 Petition.

Relevant Standard of Review

Pursuant to 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or



PDF created with pdfFactory trial version www.pdffactory.com

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id.

The terms "contrary to" and "unreasonable application" in § 2254 have independent meaning. See Bell v. Cone, 535 U.S. 685, 694 (2002). The "contrary to" clause applies only when a state court either employs a test or rule of law that is inconsistent with one announced by the United States Supreme Court or reaches the opposite conclusion on materially indistinguishable facts. See id.; Williams v. Taylor, 529 U.S. 362, 404-10 (2000); Rashad v. Walsh, 300 F.3d 27, 34-35 (1st Cir. 2002). An "unreasonable application" of federal law exists when a state court (1) uses the correct legal standard in an objectively unreasonable manner, (2) unreasonably extends Supreme Court precedent to an inappropriate context, or (3) fails to extend such Supreme Court precedent to an appropriate context. See Bell, 535 U.S. at 694; Rashad, 300 F.3d at 34-35. This standard "does not demand infallibility: a state court's decision may be objectively reasonable even if a federal habeas court, exercising its independent judgment, would have reached a different conclusion." Rashad, 300 F.3d at 34-35.

Moreover, an unreasonable application of Supreme Court precedent is not the same as an erroneous application; "the mere fact that there was some error or that the state decision was incorrect is not enough." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002). The "unreasonableness" of the ruling must be incrementally "great enough to make the decision unreasonable in the independent and objective judgment of the federal court. If it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." McCambridge, 303 F.3d at 36-37.



PDF created with pdfFactory trial version www.pdffactory.com

Finally, "'the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary.'" Rashad, 300 F.3d at 35-36 (quoting Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002)). Unless a petitioner carries this burden, a federal habeas court is obliged to credit the factual findings of state courts on the trial and appellate levels. Id. This includes those reasonable inferences drawn by the state courts from the evidence presented at trial as well as the trial record. Id. at 39 n.8.

As relates to the issues raised by Petitioner in the instant action, the question then is whether the Rhode Island Supreme Court's rejection of Petitioner's, respectively, Batson and Miranda claims, constituted an unreasonable application of clearly established federal law as declared by the United States Supreme Court.

The Batson Claim

Petitioner suggests that the prosecution peremptorily struck an African American Juror during trial voir dire on account of that juror's race; and that the Rhode Island Supreme Court's rejection of this Batson claim constituted an unreasonable application of clearly established federal law as declared by the United States Supreme Court. (*See* the ***Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody*** at "Paragraph 9(d), Paragraph 12".) The ***Brief in Chief*** submitted by the State of Rhode Island, however, demonstrated that the prosecution's challenge to the African American juror was plainly not motivated by racial animus. In most relevant part, the ***Brief in Chief*** of the State stated:

> The prosecution moved to peremptorily challenge the juror at issue ("juror number 168" (PT I, 225)) for two reasons: 1) Two of her brothers were police officers: The prospective juror had "not one but two brothers" (PT I, 227) active in Rhode Island law



PDF created with pdfFactory trial version www.pdffactory.com

enforcement (one brother being a Providence Police Officer, the other, a State Police Officer (PT I, 96-97)), and the prosecution was evidently concerned, based upon her responses in voir dire a few days earlier (PT I, 92-101), that she might demonstrate her absolute impartiality as a law-enforcement-related-juror by going so far as to vote to acquit, even though she believed that the prosecution had proven its case beyond a reasonable doubt. (PT I, 226-28, 230-31.) As well, the prosecution was concerned with the fact that her Providence Police Officer brother, who often (in many a criminal drug trial) went up as a witness against Defendant's counsel Thomas F. Connors, had a cordial relationship with the Defendant's counsel. (*Id.*) 2) <u>Demonstrated Lack of Attentiveness</u>: The prosecution pointed to the fact – apparently not rebutted by Defendant's counsel – (PT I, 229-30) that the prospective juror had failed to "ma[k]e eye contact with []either counsel" (PT I, 228), and was "not paying attention" (*id.*), thus raising, in the prosecution's estimation, "concern[s] about her attentiveness with respect to her participation in the trial process" and "[h]er apparent lack of investment in the matter at hand" (*id.*).

Responding to these assertions, defense counsel averred that 1) her two brothers in law enforcement should be a reason for retaining, not striking, the prospective juror (PT I, 228-30); 2) Mr. Connors was not so much close to the prospective juror's brother on the Providence Police Force as an adversary of his (*id.*); and 3) there were many other prospective jurors who failed to make "eye contact with defense counsel or [the] prosecutor" and who were not similarly challenged by the prosecution (*id.*).

After considering the basis of the prosecution's challenge to Juror Number 168, and considering as well the defense's response to such basis of challenge, Justice Krause determined that "[b]ased on the representations and reasons given by the State I'm fully satisfied that there has been no purposeful racial discrimination, and the explanations given by the prosecutor are, indeed, race neutral. The challenge shall be honored." (PT I, 230.) Justice Krause's assessment, that Prosecutor White's reasons for peremptorily challenging Juror Number 168 were not motivated by racial animus, is fully supportable by the record, and by no means "clearly wrong"

Indeed, the thrust of Defendant's appellate disagreement with Justice Krause on the question whether Prosecutor White challenged Juror Number 168 on account of her race – Defendant's assertion that because Mr. White failed to strike other (white) prospective jurors with family members in law enforcement, Mr. White's challenge to Juror Number 168 must have been on account of her race (*Brief of Defendant* at 24-28) – is a contention never voiced to Justice Krause in the Superior Court below. Because Defendant below never made this "equally-applicable-to-nonblacks" line of



PDF created with pdfFactory trial version www.pdffactory.com

argument, he should not be heard to advance it on appeal for the first time. [citing, inter alia, to the United States Court of Appeals for the 11th Circuit's decision in United States v. Houston, 456 F.3d 1328, 1337-39 (2006), and to United States v. Katuramu, 174 Fed.Appx. 272, 275 (6th Cir. 2005)] ***

Likewise, in this case, the State would suggest that it is inappropriate of the defense – for the first time on appeal – to peruse the rather lengthy voir dire transcript for any and all "jurors with relatives in law enforcement" (***Brief of Defendant*** at 24, n. 18) who were not challenged by the prosecution, in an attempt to bolster his claim that Prosecutor White actually challenged Juror Number 168 on account of her race. Had defense counsel, at the Batson inquiry before Justice Krause, performed the, rather detailed, analysis set forth at pages 24-27 of the ***Brief of Defendant***, Mr. White would have had the opportunity to explain the basis for his juror-challenge and non-challenge determinations, and, more importantly, this Court would have had the benefit of Justice Krause's assessment of Mr. White's explanation of his juror-challenge and non-challenge determinations. Therefore, because Defendant below simply failed to articulate before Justice Krause the contention that Mr. White's failure to challenge other, white, law-enforcement related venire members is evidence of his purposeful discrimination, Defendant should be precluded from doing so in this Court.

In any event, on the substance of the matter, the State would take exception to Defendant's contention that because Prosecutor White failed to strike a number of white potential jurors with relatives in law enforcement, it is evident that his concern with Juror Number 168's relationship with her brothers was merely pretextual. For, contrary to the Defendant's suggestion, the differences between Juror Number 168 and the other jurors with law enforcement relations were so pronounced, as to make any "equally-applicable-to-nonblacks" line of argument devoid of significance. For while Juror Number 168 had two immediate family members active in Rhode Island law enforcement (a brother on the State Police force and another brother (Angelo Avante) on the Providence Police force), only one of the other compared-to jurors had a family member ***active*** in Rhode Island law enforcement – and that was Juror Number 73 whose cousin's ***son*** was an active member of the ***East*** Providence Police Force. (PT I, 187-93.) But, of course, having a ***cousin whose son*** is on the ***East*** Providence Police Force is altogether different than having a ***brother*** who serves on the ***very police force*** (Providence Police Department) involved in the investigation and prosecution of this very case. Moreover, and what makes any comparison between Juror Number 168 and the other jurors referenced by Defendant in his brief altogether incongruous, Juror Number 168's active Providence Police Force brother (Angelo



PDF created with pdfFactory trial version www.pdffactory.com

Avante) not only knew – and (according to defense counsel himself) "kn[e]w well" (PT I, 95) – Defendant's lawyer (*id.*), but was also in fairly regular professional contact with Defendant's counsel by virtue of the numerous cases in which Defendant's counsel would cross-examine Officer Avante on the stand while the Officer was testifying for the State. (PT I, 96 (Defendant's attorney stating that the officer "is on – involved in narcotics cases, and I have had him on many, many cases over the last couple of years.").) Consequently, the State would respectfully suggest, it is simply "apples and oranges" to compare Juror Number 168's brother Angelo Avante – an individual who was active in the very police department which investigated and was involved in the prosecution of this case, and who "kn[e]w well" (PT I, 95) Defendant's lawyer as a consequence of the numerous criminal drug cases in which he had been cross-examined by Defendant's counsel (*id.* at 96) – to the law enforcement individuals related to the other nonchallenged jurors.

The comparison Defendant makes on appeal is further incongruous for two other reasons as well. First, unlike the responses of the other jurors with law enforcement relations (PT I, 254-58, 119-21, 157-58, 187-93, 142, 205-13, 201-03), some of the responses Juror Number 168 gave during her voir dire raised legitimate questions about how her relationship with her brothers might affect her service as a juror on this case. For example, in response to Prosecutor White's question whether "there is anything about your relationship with your brothers, what they do for a living, that would cause you to think 'I can't be a juror. I shouldn't be a juror in this case?'" (PT I, 94), she responded "Well, I may – it's a little bit of fear being around, if there is gatherings, you know, family things that could overhear, people in conversation, they made – they may know. I mean, I don't know. Might hear something." (PT I, 95.) This is hardly the response that would assure a prospective juror in Juror Number 168's position a seat on the petit jury. And, in response to Mr. Connors' question, later in the voir dire, whether she would be "able to find [Defendant] not guilty if you felt the State didn't meet the burden knowing [Brother Avante] is probably going to be talking to you after this trial? His is your brother." (PT I, 97), Juror Number 168 responded "What? Would I find – (Pause) I don't know if – I don't –" (*id.*), at which point Mr. Connors proceeded on to another line of inquiry (*id.*). Thus, while, as Defendant points out, Juror Number 168 did "*general[ly]* *** represent *** that her relationship with her brothers would have no effect on her consideration of the case" (*Brief of Defendant* at 27, citing to PT I, 92-101)(emphasis added), she – unlike the relevant responses of the other prospective jurors Defendant would compare her to (PT I, 254-58, 119-21, 157-58, 187-93, 142, 205-13, 201-03)



PDF created with pdfFactory trial version www.pdffactory.com

> – *did* give a number of responses to inquires relating to her relationship with her brothers, which can quite easily and legitimately justify the prosecution's wariness of having her sit on the petit jury.
>
> Finally, Juror Number 168 is not fairly comparable to the other law-enforcement related jurors for another reason stated by the prosecutor: her observed failure to make "eye contact with []either counsel", coupled with her observed failure to "pay[] attention", evidencing "[h]er apparent lack of investment in the matter at hand[.]" (PT I, 228.)[2] While Defendant on appeal appears to

---

[2] A venireperson's inattentiveness, failure to make eye contact, and even demeanor are, of course, legitimate race-neutral grounds for a peremptory challenge. ***See e.g.*** State v. Lopez, 721 A.2d 837, 839 (R.I. 1998)(where "prosecutor explained that, based on the juror's demeanor during voir dire and the way the juror answered questions, he [the prosecutor] formed a 'gut feeling' about the juror's desirability which had nothing to do with race", trial court was not clearly wrong to overrule defendant's Batson objection); Moss v. State, 877 S.W.2d 895, 898 (Tex.Ct.App 1994)(lack of attention and appearing disinterested is a race-neutral reason for a challenge); Stubbs v. Gomez, 189 F.3d 1099, 1105 (9th Cir. 1999)(a panelist's demeanor and lack of eye contact, which "showed a disinterest in being a juror", was race-neutral explanation for strike); State v. Carroll, 34 S.W.3d 317, 320 (Tenn. Ct. App. 2000)("The lack of eye contact has been approved as justification for rejecting a prospective juror", citing a number of out of state cases); United States v. Power, 881 F.2d 733, 740 (9th Cir. 1989)(considering race-neutral government's explanation that a "juror's fidgeting and looking around as he sat in the jury box *** made the prosecutor believe that the individual would not be an attentive juror."); Cardona v. State, 2004 WL 1440659, *4 (Tex.Ct.App.2004)("prospective juror's demeanor during voir dire, including a lack of eye-contact with the prosecutor or apparent disinterest, is a race-neutral reason for exercising a peremptory challenge"); Barnes v. State, 855 S.W.2d 173, 174 (Tex.Ct.App. 1993)(State may strike a prospective juror who appears inattentive); People v. Linen, 773 N.Y.S.2d 330 (N.Y.A.D. 2004)(prosecutor's explanation that the prospective juror would not make eye-contact with him was race-neutral); Jacox v. Pegler, 665 N.W.2d 607, 614 (Neb. 2003)("In prior criminal cases, this court and the Nebraska Court of Appeals have determined that where a juror was struck from the venire because the State was concerned about the juror's ability to pay adequate attention during trial, such race-neutral explanation was adequate."); State v. Jones, 934 P.2d 267 (N.M. 1997)(accepting prosecutor's explanation of lack of eye contact and lack of assertiveness); United States v. Martinez, 168 F.3d 1043, 1047 (8th Cir. 1999)(peremptory strike of venireperson based on body position and eye-contact held race-neutral); Woodward v. State, 726 So.2d 524, 531 (Miss. 1997)("Lack of eye contact and demeanor have been approved as race-neutral reasons for peremptorily challenging black members of the venire."); State v. Caporasso, 495 S.E.2d 157, 162 (N.C. App. 1998)("When, as here, a juror displays a lack of attention, the prosecution may use a peremptory challenge to excuse the juror from service."); State v. Jones, 934 P.2d 267, 269 (N.M. 1997)(a juror's failure to make eye contact, as well as a lack of assertiveness, "are legitimate grounds for exercising a peremptory challenge.");



PDF created with pdfFactory trial version www.pdffactory.com

> suggest that these articulated observations of Juror Number 168 were merely pretextual (*Brief of Defendant* at 31-32), his counsel below appeared to recognize that the prosecution's observations of Juror Number 168's attention-level and eye-contact-with-attorneys were ***not*** contrived, as Mr. Connors response to the prosecution's observations was only that there were many other similarly non-attention-paying and eye-contact-lacking venirepersons who were not struck by the prosecution. (PT I, 229 ("The other reasons that they are claiming that there's no eye contact, not paying attention, body language, that could apply to half the people sitting in the box over there. I don't think the lack of eye contact with defense counsel or prosecutors is a sufficient reason to say that this person should be stricken.").) Mr. Connors' observations as to the attention-level and eye-contact of the other jurors may or may not be so; but certainly, Juror Number 168's attention-paying and eye-contact problems, ***coupled*** with the fact the one of her brothers, an active member of the police force investigating and assisting in the prosecution of this case, had a close professional rapport with the lawyer representing Mr. Pona and the fact that, unlike the other jurors with relations in law enforcement, she gave a number of what could be termed unsatisfactory responses to questions about her relationship with her two law enforcement brothers, ***was*** "sufficient reason" (PT I, 229) for Justice Krause not to have been clearly wrong in determining that Mr. White's challenge to Juror Number 168 was not on account of her race.
>
> For all of these reasons, then, the State would respectfully suggest that it was not clearly wrong of Justice Krause to accept the race-neutral reasons proffered by the state, and conclude that Prosecutor White had not struck Juror Number 168 on account of her race.

(*State of Rhode Island's Brief in Chief* at pp. 15-30)(all but one of the footnotes omitted).

In rejecting Petitioner's Batson claim, the Rhode Island Supreme Court, while not passing upon every justification proffered by the State, did hold that "we are satisfied that Juror 168's undisputed demeanor at voir dire, standing alone, constituted a sufficient race-neutral reason that satisfied Batson in this case. The trial justice committed no error

---

Polk v. Dixie Insurance Company, 972 F.2d 83, 86 (5th Cir. 1992)("Recognizing that the decision to exercise a peremptory challenge is subjective and often influenced by intuitive assumptions, we have explicitly accepted eye contact (or lack thereof) as a legitimate rationale.").



PDF created with pdfFactory trial version www.pdffactory.com

in this regard." (State v. Pona, 926 A.2d at 609.) The State would most respectfully suggest that there is no cogent argument, presented in the ***Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody***, that this holding constituted an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Petitioner's Batson claim should, accordingly be rejected.

Petitioner's Miranda Claim

With respect to Petitioner's Miranda claim, the Rhode Island Supreme Court determined in most relevant part:

> On appeal, defendant contests the trial justice's ruling, asserting that the state should be required to make at least a minimal effort to memorialize defendant's custodial statement or to secure defendant's signature on a pre-printed rights form to satisfy its burden of proving a voluntary, knowing, and intelligent waiver of Miranda rights. Not to do so, defendant claims, violated his rights under article 1, section 10, of the Rhode Island Constitution and the Fifth Amendment to the United States Constitution.
>
> We need not reach the merits of defendant's claim. Critically, Det. Marsland was recalled to testify as a ***rebuttal*** witness regarding the substance of the interrogation to contradict testimony given by defendant during his case-in-chief. Detective Marsland's testimony demonstrated that defendant had subscribed to no less than three stories to explain his fingerprints on the Blazer and that defendant had told Det. Marsland previously that only one hour and twenty minutes had elapsed between the two encounters with his father on the day of Feliciano's murder, whereas defendant testified at trial that this window of time was closer to four hours. It is well settled in this jurisdiction that, in accordance with Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), "statements, inadmissible against a defendant in the prosecution's case in chief because of a lack of the procedural safeguards required by [Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)], may, if their trustworthiness satisfies legal standards, be used for impeachment purposes to attack the credibility of a defendant's direct testimony at trial." State v. Mattatall, 603 A.2d 1098, 1111 (R.I.1992). Therefore, in the present case, even if defendant's custodial statements were inadmissible in the prosecution's case-in-



PDF created with pdfFactory trial version www.pdffactory.com

> chief as violative of the prophylactic requirements of *Miranda*-an issue we need not decide-Det. Marsland's testimony regarding those statements was admissible on rebuttal to impeach defendant's trial testimony.
>
> The trial justice committed no error.

(State v. Pona, 926 A.2d at 610-11)(emphasis in original).

As with Petitioner's Batson-predicated claim, this claim too cannot be said to constitute an unreasonable application of clearly established federal law as determined by the United States Supreme Court, and, accordingly, should be dismissed.

Conclusion

For the reasons advanced above, the State of Rhode Island most respectfully moves to dismiss Petitioner Charles Pona's Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

**/s/ Aaron L. Weisman**

**AARON L. WEISMAN, # 4438**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

Date: September 15, 2008



PDF created with pdfFactory trial version www.pdffactory.com

**CERTIFICATION**

I hereby certify that on September 15, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. I also certify that I caused a copy of the within document to be sent to the following by first-class mail, on the same date:

Charles Pona
Torrance County Detention Facility
Estancia, NM 87016

/s/ Aaron L. Weisman



PDF created with pdfFactory trial version www.pdffactory.com