UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHARLES PONA

v.   C.A. No. 08-270 S

A.T. WALL

## REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge.

Petitioner, Charles Pona ("Pona" or "Petitioner"), *pro se*, an inmate in the custody of the Rhode Island Department of Corrections, filed a petition for a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. §2254 ("§ 2254") seeking release from custody (Docket # 1). The Attorney General of the State of Rhode Island, designated a party-respondent (the "State"), filed a motion to dismiss the petition on the merits (Docket # 4). Petitioner has not objected to the State's motion. This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, I recommend that the State's motion be GRANTED and the Petition be DISMISSED.

## BACKGROUND

Pona was convicted of murder, carrying a pistol without a license, and attempted arson of a motor vehicle in Providence County Superior Court on July 20, 2000. On September 14, 2000, he was sentenced to a cumulative sentence of life-imprisonment plus eight years.

Pona appealed the conviction to the Rhode Island Supreme Court (the "RISC"), raising four claims. First, relying on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986), Pona urged that the State's use of a peremptory challenge to remove the only black juror from the panel violated his right to equal protection of the law under the Fourteenth Amendment. Second, Pona argued that the trial justice had erred in admitting statements obtained in violation of the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966). Pona also argued that a search warrant used in connection with the murder investigation was invalid and that the trial court erred in denying his motion for a new trial. On June 15, 2007, the RISC denied Pona's appeal and affirmed the judgment of the trial court. *State v. Pona*, 926 A.2d 592 (R.I. 2007).

Pona now challenges the decisions by the trial justice and the RISC affirming the same regarding his claims under *Batson* and *Miranda*. The State contends the state courts' decisions

denying Pona's claims were neither contrary to, nor an unreasonable application of, clearly established federal law and that the petition should be dismissed.

## DISCUSSION

### I. Standard of Review

The scope of federal habeas review is limited by both principles of comity and the directives of the Anti-terrorism and Effective Death Penalty Act, 28 U.S.C. § 2254 ("§ 2254") et seq. ("AEDPA").

#### A. Procedural Default: Independent and Adequate State Law Basis

Pursuant to the procedural default doctrine, with certain limited exceptions, "[a] federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Beard v. Kindler*, -- U.S.--, 130 S.Ct. 612, 614 (2009)(quoting *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546 (1991)). A rule is independent if the state court judgment "clearly and expressly" rests on the petitioner's failure to comply with the state procedural rule, *Harris v. Reed*, 489 U.S. 255, 266, 109 S.Ct. 1038 (1989), and adequate if it is "firmly established and regularly followed," *Beard*, 130 S.Ct. at 617 (citations omitted). To avoid the bar against federal habeas review of procedurally defaulted claims, a petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639 (1986)( miscarriage-of-justice exception available when actual innocence is demonstrated).

#### B. AEDPA: Analysis of the Law and Determination of the Facts

Additionally, with respect to any claim adjudicated on the merits in state court, the AEDPA directs that the federal habeas court only grant relief if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented," § 2254(d)(2). For a federal habeas court to find a state court decision "contrary to" federal law, it must determine that the state court applied a legal principle different from the governing law set forth in Supreme Court cases, or decided the case differently from a Supreme Court case on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495 (2000). Alternatively, to grant relief under the "unreasonable application" clause, the federal habeas court must determine the state court decision was not just incorrect, but also

objectively unreasonable. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933 (2007). The federal habeas court's focus "is not how well reasoned the state court decision is, but whether the outcome is reasonable." *Hurtado v. Tucker*, 245 F.3d 7, 20 (1st Cir. 2001).

A state court decision is also reversible if it is based on an unreasonable determination of facts in light of the evidence presented. 28 U.S.C. §2254(d)(2). A state court's determination of the facts should not be deemed unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, -- U.S. --, 130 S.Ct. 841, 849 (2010). Further, under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II. *Batson* Claim

As his first ground for relief, Pona points to the state court rulings allowing the prosecutor to use a peremptory challenge to remove the sole black juror on the panel. Based on Pona's direct challenge to the RISC, part of which he repeats in the Petition, it appears that he is challenging (1) the manner in which the trial justice arrived at his determination that there was no purposeful racial discrimination as contrary to clearly established federal law and (2) the determination itself as an unreasonable application of the facts.

### A. *Batson* Legal Standard

In *Batson*, the Supreme Court held that a prosecutor's use of a peremptory challenge to exclude an individual from jury service based on his or her race constitutes a violation of the equal protection rights of both the potential juror and the defendant. *Batson*, 476 U.S. at 86. A defendant's race-based *Batson* challenge to a prosecutor's peremptory strike involves three steps: (i) the objecting defendant must make a *prima facie* showing of purposeful discrimination; (ii) the prosecutor must then articulate a race-neutral explanation for the challenge; (iii) the defendant must then prove that the explanation given is a pretext for discrimination. *Rice v. Collins*, 546 U.S. 333, 338, 126 S.Ct. 969 (2006) (citations omitted). At the second step, the prosecutor's explanation need not be persuasive, or even plausible, so long as the reason is comprehensible and not inherently discriminatory. *Id.* (citing *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769 (1995) (per curiam)). The final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, with "the ultimate burden of persuasion regarding racial motivation rest[ing] with, and never shift[ing] from, the opponent of the strike." *Id.* (quoting *Purkett*, 514 U.S. at 768).

## B. Factual Background: The Peremptory Challenge in the State Courts

During jury selection for his trial in state court, the State exercised a peremptory challenge to remove the only black juror, Juror 168, from the venire, and Pona objected. *Pona*, 926 A.2d at 600. Recognizing a *Batson* problem, the trial justice instructed the parties on their respective burdens, and turned to the prosecutor for his explanations. *Id.* The prosecutor offered three purportedly race-neutral justifications for challenging Juror 168: (i) Juror 168, because she had two brothers in law enforcement, might be inclined to overcompensate for the assumption that she would side with the police by voting for acquittal; (ii) Juror 168 might be swayed to side with defense counsel because one of her brothers had a relationship with defense counsel; and (iii) Juror 168 displayed inattentiveness, lack of eye contact, and body language during *voir dire* that indicated a lack of interest in the proceedings. *Id.* In his rebuttal, defense counsel argued that: (1) as having family in law enforcement would generally make a juror more likely to side with the prosecution, the State's first reason for removing Juror 168 was implausible and suggested that the peremptory strike was motivated solely by race; (2) because defense counsel knew Juror 168's brother only through cross examining him in other cases, such relationship would not affect Juror 168's decisions and thus was not a valid reason for removing her as a juror; and (3) the inattentiveness justification was a ruse because it "could apply to half the people sitting in the [jury] box." *Id.* at 600-601. After hearing the arguments, the trial justice allowed the State's challenge, stating simply, "Based on the representations and reasons given by the State, I'm fully satisfied that there has been no purposeful racial discrimination, and the explanations given by the prosecutor are, indeed, race neutral." *Id.* at 601.

On direct appeal to the RISC, Pona urged that the trial justice committed clear error by allowing the peremptory challenge. Specifically, the Pona urged that the trial justice erred by failing to (i) include a comprehensive analysis on the record of his reasoning for finding the State's race-neutral reasons valid; (ii) compare Juror 168 to white juror's who were not struck; and (iii) determine that the State's proffered reasons for challenging Juror 168 were pretext for discrimination. *Id.* However, following an in-depth analysis of *Batson* and its progeny, the RISC rejected Pona's claim, determining that (1) the trial justice's findings were adequate; (2) Pona had waived his claim to a comparative juror analysis; and (3) as the prosecutor's description of Juror 168 as inattentive was unchallenged at trial and constituted a legitimate race-neutral reason, such explanation was not a pretext for a racially motivated strike, and consideration of the other two proffered reasons was unnecessary. *Id.* at 606-10.

C. **Legal Analysis**

1. **Challenge Regarding Clearly Established Federal Law under § 2254(d)(1)**

First, in ruling on Pona's challenge to the State's peremptory strike of Juror 168, both the trial justice and the RISC properly identified the *Batson* tripartite test as providing the analytical framework. *See Thaler v. Haynes*, -- U.S. --, 130 S.Ct. 1171 (2010); *Snyder v. Louisiana*, 552 U.S. 472, 128 S.Ct. 1203 (2008); *Deleon v. Spencer*, No. 07-11660, 2010 WL 3895174, at *11 (D.Mass. Sept. 30, 2010)(*Batson* appropriate law to apply).

Second, to the extent Pona urges here that the trial justice's failure to detail his reasons on the record for allowing the State's peremptory challenge of Juror 168, and the RISC's decision affirming the same, were contrary to, or an unreasonable application of, Federal law, such claims fail. The trial justice stated on the record that he was "fully satisfied that *there has been no purposeful racial discrimination* ... ." *Pona*, 926 A.2d at 601 (emphasis added). In determining that Pona had not met demonstrated that the peremptory challenge was racially motivated, the trial justice satisfied the third *Batson* step. *See Hernandez v. New York*, 500 U.S. 352, 363, 111 S.Ct. 1859 (1991). The trial justice's failure to expound upon his reasons for allowing the State's peremptory challenge, and the RISC's decision affirming the same, were not contrary to, or unreasonable applications of, clearly established Federal law. *See Dolphy v. Mantello*, 552 F.3d 236, 239 (2nd Cir. 2009)("Trial courts applying the third *Batson* prong need not recite a particular formula of words, or mantra"); *Smulls v. Roper*, 535 F.3d 853, 860 (8th Cir. 2008)("federal law has never required explicit fact-findings following a *Batson* challenge").

2. **Challenge Regarding Factual Determination under § 2254(d)(2)**

Pona also appears to challenge as unreasonable both the trial justice's factual determination that the peremptory strike was not based on discriminatory motives and the RISC's ruling affirming the trial justice's determination. However, as discussed below, it was not unreasonable for the state courts to credit any of the prosecutor's race-neutral explanations, and, therefore, this ground in the Petition should be denied. *See Rice v. Collins*, 546 U.S. 333, 338, 126 S.Ct. 969 (2006)("a federal habeas court can only grant [petitioner's] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge").

a. **Demeanor-Based Explanation**

As noted, the RISC credited the demeanor-based explanation as sufficient to indicate that the peremptory strike was not racially motivated. It is clear that RISC correctly determined that a demeanor-based explanation standing alone is a legally adequate race-neutral reason to justify

5

a peremptory challenge. *See Thaler*, 130 S.Ct. at 1175. Additionally, here, although it is not clear if the trial court accepted the demeanor-based explanation, the RISC determined that the prosecution's description of the challenged juror's demeanor as inattentive was "undisputed." *Pona*, 926 A.2d at 609. Pona has not challenged such finding by the RISC. Therefore, it was not unreasonable for the state courts to credit the prosecutor's demeanor-based explanation.

### b. Brothers in Law Enforcement

Additionally, Pona has not shown that it was unreasonable for the trial court to accept either of the other explanations offered by the prosecutor for striking Juror 168. First, the prosecutor's stated concern, that Juror 168 might overcompensate by voting to acquit Pona in an effort to show that she was not biased, is not objectively unreasonable. Further, certain *voir dire* responses of Juror 168 (such as (i) she might have "a little bit of fear being around" her brothers if she were a juror in this case, Pretrial Tr., May 22, 26, June 7 & July 3, 5, 6, 2006 ("PT I"), at 95; and (ii) although she did not think it would, "she did not know" if her reasoning might be affected by the thought of facing criticism from her brother on the Providence police force for her decision in this case, PT I, at 98) suggest that it was not unreasonable to credit the prosecutor's expressed concern about Juror 168 having brothers in law enforcement.

Similarly, it was not unreasonable to accept as non-racially motivated the prosecutor's explanation that he struck Juror 168, in part, because of defense counsel's professional contacts with one of Juror 168's brothers. Pona urged on direct appeal that the explanation did not ring true because the relationship between his lawyer and Juror 168's brother was adversarial and that the mischaracterization of the relationship further evidenced the State's racial animus. Brief-In-Chief of Appellant, at 28-30. However, as the State pointed out in its reply brief on direct appeal, a relationship that is professionally adversarial may very well be socially respectful or even friendly. Brief of Appellee, at 25 n.23. And, defense counsel had noted during jury empanelment, "I know [you brother] very well," PT I, at 95, and that he and the brother would "say hi to each other always," *id.* at 229.

### c. Comparative Juror Data

On direct appeal to the RISC, Pona argued that two of the prosecutor's purportedly race-neutral reasons – that the juror had two brothers in law enforcement and she was inattentive – were pretexts for racial discrimination because, in part, the reasons applied equally to white jurors who were not excused from venire. *Pona*, 926 A.2d at 609. Pona relied on *Miller-El v. Dretke*, a case decided after his trial but prior to his appeal, in which the Supreme Court stated,

6

"If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." 545 U.S. 231, 241, 125 S.Ct. 2317 (2005). The RISC refused to consider Pona's argument. Citing *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060 (1989), the RISC first explained that *Miller-El* was inapplicable to Pona's appeal because it did not announce a novel rule. *Pona,* 926, A.2d at 606. The RISC then determined that (i) Pona had waived his right to a side-by-side juror analysis regarding jurors with relatives in law enforcement by not raising such argument before the trial justice under Rhode Island's "well-settled raise-or-waive rule," *id,* and (ii) the "off-the-cuff" comment at *voir dire* by Pona's lawyer that Juror 168's inattentiveness, lack of eye contact, and objectionable body language "'could apply to half the people sitting in the box over there'" was not "a sufficiently focused objection" to preserve for appeal an inquiry into the demeanor of other jurors, *id.* at 608 n.15.

To the extent Pona seeks to revive here his argument that a comparative juror analysis reveals that the prosecutor's peremptory challenge of Juror 168 was racially motivated, such argument fails. Not only has the Pona failed to specifically refer to a side-by-side analysis in the Petition, but Pona procedurally defaulted his right to such analysis by not alerting the trial justice about such comparisons. Further, even if the comparisons suggested by Pona on direct appeal are considered, such evidence does not indicate that the prosecutor's explanations for striking Juror 168 were pretextual.

### i. Procedural Default

Procedural default applies here. The state procedural grounds on which the RISC relied in declining to consider the comparative juror data were both independent (the RISC clearly and expressly relied on them), *Pona,* 926 A.2d at 609-10 & 608 n.15, and adequate (the contemporaneous objection rule requirement is "well-settled" in Rhode Island jurisprudence), *Pona,* 926 A.2d at 609 (citing *State v. Brown,* 915 A.2d 1279, 1282 (R.I. 2007)); *see also State v. Felicano,* 901 A.2d 631, 646 (R.I. 2006); *State v. Chakouian,* 537 A.2d 409, 415 (R.I. 1988) (defendant waived right to object to a juror as disqualified by waiting to raise the objection until after the verdict); *compare Reed v. Quarterman,* 555 F.3d 364, 369-70 (5th Cir. 2009)(in review of habeas petition, held that the state appellate court's decision refusing to consider comparative juror data not raised at trial was not adequate to create a procedural bar because the appellate

court had previously issued contradictory rulings allowing defendants to raise comparative juror data for the first time on appeal).

Further, the Supreme Court recently implied that the use of comparative juror data in the *Batson* setting could be procedurally defaulted. *See Snyder*, 552 U.S. at 483 n.2. In considering comparative juror data, the Supreme Court specifically noted, "[t]he Louisiana Supreme Court did not hold that petitioner had *procedurally defaulted reliance on a comparison* of the African-American jurors whom the prosecution struck with white jurors whom the prosecution accepted. On the contrary, the State Supreme Court itself made such a comparison." *Id.* (emphasis added); *see also Hightower v. Terry*, 459 F.3d 1067, 1071-72 (11th Cir. 2006)(petitioner who failed to raise comparative juror analysis argument in state court was procedurally barred from raising such claim in habeas petition); *cf. U.S. v. Walley*, 567 F.3d 354, 358 (8th Cir. 2009)(on direct appeal, stating, "we will not consider claims of pretext based upon the failure to strike similarly situated jurors unless the point was raised in the district court" and "[o]ur precedent ... applies the sort of procedural bar that was absent in *Snyder*")(citations omitted); *Deleon*, 2010 WL 3895174, at *11 (denying consideration of comparative juror data in habeas action where issue was not raised at trial because, pursuant to *Batson* and its progeny, defendant bears the burden of presenting evidence to prove the prosecutor's strike was racially motivated).

Additionally, Pona here has not demonstrated, or even suggested, an exception to the procedural default in this instance. The Petition does not state, and the evidence on the record does not indicate, (i) any cause for or prejudice from Pona's failure to sufficiently raise the juror comparison issue at trial, or (ii) that Pona was actually innocent of the crime at issue here.

Accordingly, as the RISC decision denying review of side-by-side juror data was based on independent and adequate state grounds, and Pona has failed to show cause and prejudice or a miscarriage of justice as a result of such decision, Pona's claims based on a comparative juror analysis are procedurally defaulted. Therefore, any claims Pona is asserting that the state courts' factual determination regarding the peremptory challenge was unreasonable because similarly situated white jurors were not removed are not subject to federal habeas review.

### ii. Not Unreasonable

Further, even if the Court reviewed such comparative data, the trial court's factual determination finding that the removal of Juror 168 was not racially motivated is not objectively unreasonable. First, with respect to the claim by Pona's lawyer that the prosecutor's description of Juror 168's demeanor in his reason for striking her applied to half of the people in the jury

8

box, there is no evidence in the record to support this statement. Second, although on appeal to the RISC, Pona pointed to non-removed white jurors who had family members in law enforcement, Brief-In-Chief of Appellant, at 24-28, further examination suggests that such jurors were not sufficiently similarly situated to Juror 168 to render the comparison meaningful. *Cf. Snyder*, 552 U.S. at 483 (recognizing that "an appellate court must be mindful that an exploration of the alleged similarities at the time of trial might have shown that the jurors in question were not really comparable"). Only two of the white jurors had family members who were active policemen (one juror had a cousin, PT I, at 187-93, and another juror had a son, *id.* at 254-58), and none of the compared-to white jurors had family members on the police force involved in the investigation of the case. Plus, Pona did not point to, and the record from the *voir dire* testimony before the Court does not indicate, any hesitation on the part of any of the compared-to white jurors in answering questions about service as a juror, or to a demeanor that suggested inattentiveness, as have been revealed regarding Juror 168.

### d. Overall Record – Not Unreasonable

Finally, here, unlike in *Miller-El*, relied on by Pona in his direct appeal, there are no other indicia of racial discrimination. *See Pona*, 926 A.2d at 609; *compare Miller-El*, 545 U.S. at 240-41 & 253-66 (noting complaints regarding juror shuffling, differential questioning of white and black jurors, use of peremptory strikes against multiple minority jurors, and state instructions directing prosecutors to strike minority jurors); *Snyder*, 552 U.S. at 476 (prosecutor eliminated all five prospective minority jurors with peremptory strikes). Accordingly, the overall record here supports the conclusion that the state courts' rejection of Pona's *Batson* objection was not an unreasonable determination of fact.

### III. *Miranda* Claim

#### A. Factual Background

On October 28, 1999, Pona made statements (the "October 28th Statements") to Detective Marsland of the Providence Police Department ("PPD"). *Pona*, 926 A.2d at 610. Prior to his trial, Pona moved to suppress these statements as violating his *Miranda* rights. *Id.* The trial justice held a pre-trial hearing at which he determined that the State "satisfied its burden of demonstrating by clear and convincing evidence that [Pona] was fully admonished of his rights, and that he voluntarily, without coercion of any kind, decided to speak with the officers and that his decision to do so was a product of his free and intelligent choice." Pretrial Tr., June 28, 29 & July 3, 2000 ("PT II"), at 112. In his case-in-chief at trial, Pona offered testimony inconsistent

with the October 28th Statements. *Pona*, 926 A.2d at 611. The prosecution then called Detective Marsland as a rebuttal witness to testify regarding the content of the October 28th Statements. *Id.*

On appeal to the RISC, Pona argued that the PPD officers did not obtain a signed waiver form from Pona before he made the October 28th Statements, and, therefore, the State had failed to prove by clear and convincing evidence that Pona had knowingly and voluntarily waived his *Miranda* rights. Pona urged that the entry of his statements into evidence despite the State's failure to obtain his signed waiver or other proof of his voluntary waiver of his *Miranda* rights violated his rights under the United States and Rhode Island Constitutions. *Id.* The RISC rejected Pona's claim without determining whether or not the October 28th Statements violated "the prophylactic requirements of *Miranda*." *Id.* Instead, citing *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643 (1971), the RISC determined that, even if the custodial statements were inadmissible in prosecution's case-in-chief, the statements were admissible during rebuttal at Pona's trial, and therefore the trial justice did not commit error. *Id.*

### B. Legal Analysis

Pona urges, as a ground for granting his Petition, that he "did not knowingly, intentionally and voluntarily waive his rights under *Miranda*." Petition, at 12. Presumably Pona urges that the trial court's finding that the statements were made knowingly, intentionally, and voluntarily constituted an unreasonable determination of the facts in light of the evidence while the State courts' decisions permitting the use of the statements at trial were contrary to, or involved an unreasonable application of, clearly established Federal law. However, Pona fails to establish either theory in this case.

#### 1. Statements Used For Impeachment

Here, the RISC's decision finding no error in the trial court's ruling allowing the admission of the October 28th Statements on rebuttal to impeach Pona was neither contrary to nor an unreasonable application of the Supreme Court's relevant holdings in *Harris* and *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215 (1975). In *Harris*, the Supreme Court held, as the RISC noted, that statements inadmissible against a defendant in the prosecution's case in chief because of a lack of the procedural safeguards required by *Miranda* may be used to impeach the defendant on cross examination so long as the trustworthiness of the statements satisfy legal standards (*i.e.*, were neither involuntary nor coerced), 401 U.S. at 224-26. In *Hass*, the Supreme Court extended this principle to allow the introduction of such statements during rebuttal testimony, 420 U.S. at 723 (police officer called as rebuttal witness to testify to inconsistent statements).

Further, with respect to the factual determination involved here, although the RISC did not specifically state that the October 28th Statements were not involuntary or coerced, such a determination is implicit in the RISC ruling explicitly noting that a statement must satisfy legal trustworthiness standards to be admitted for impeachment purposes. *Pona*, 926 A.2d at 611. And, the decision is not unreasonable here, where there is no evidence in the record indicating that the statements were either involuntary or coerced or suggesting that the statements were not "'the product of a rational intellect and a free will.'" *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.Ct. 2408 (1978)(emphasis omitted). Indeed, Pona admitted that the October 28th Statements were in no way physically coerced, PT II, at 102, and urges in his Petition only that he "did not knowingly, intentionally and voluntarily waive his rights under *Miranda*," not that the statements were made involuntarily or under coercion.

### 2. Waiver of *Miranda* Rights

Additionally, the trial justice's determination that the State met its burden of showing that Pona provided the October 28th Statements after voluntarily, knowingly, and intelligently waiving his *Miranda* rights also did not involve an unreasonable application of Federal law or determination of fact. First, to the extent Pona challenges the trial justice's finding that the PPD demonstrated that Pona voluntarily, knowingly and intelligently waived his *Miranda* rights as an unreasonable application of Federal law because the PPD failed to obtain a signed waiver form, such argument fails. Federal law does not require a signed waiver form to support a finding that a defendant voluntarily waived his or her *Miranda* rights. *See U.S. v. Guzman*, 603 F.3d 99, 106 (1st Cir. 2010)("Oral waivers of *Miranda* rights are sufficient"). Second, Pona has made no showing rebutting the presumption that the trial justice's determination that Pona voluntarily, knowingly, and intelligently waived his *Miranda* rights was correct. And, even if the record were to be reviewed *de novo*, the record from the suppression hearing supports the trial justice's conclusion. PT II, at 54-58, 60, 84-85, 87-88.

### CONCLUSION

As set forth above, the state courts' decisions on the *Batson* and *Miranda* issues in Pona's trial and appeal were neither contrary to or an unreasonable application of clearly established Federal law nor based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, I recommend that the State's motion to dismiss be GRANTED and the Petition be DISMISSED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed R. Civ. P. 72(b); LR Cv 72(d). Failure to filed timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam).

_____
Jacob Hagopian
Senior United States Magistrate Judge
December 28, 2010